IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **TIFFINEY RHOSHELLE CYPHERS,** | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:21-CV-1368-P |
| | § | |
| **COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | § § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE
## AND
## NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

## FINDINGS AND CONCLUSIONS

### I. STATEMENT OF THE CASE

Plaintiff Tiffiney Rhoshelle Cyphers ("Cyphers") filed her action pursuant to sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claims for a period of disability and disability insurance benefits ("DIB") under Title II and supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA"). Cyphers protectively filed her applications in December 2019 alleging that her disability began on May 2, 2016. (Transcript ("Tr.") 22; *see* Tr. 251–67.) After her applications were denied initially and on reconsideration, Cyphers requested a hearing before an administrative law judge ("ALJ"). (Tr. 22; *see* Tr. 140–41.) The ALJ held a hearing on March 11, 2021, and issued a decision on April 22, 2021, denying Cyphers' applications for benefits. (Tr. 22–37, 46–65.) On October 19, 2021, the Appeals Council denied Cyphers' request

for review, leaving the ALJ's April 22, 2021 decision as the final decision of the Commissioner in Cyphers' case. (Tr. 1–7.) Cyphers subsequently filed this civil action seeking review of the ALJ's decision.

## II.   STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA. In addition, numerous regulatory provisions govern disability insurance and SSI benefits. *See* 20 C.F.R. Pt. 404 (disability insurance); 20 C.F.R. Pt. 416 (SSI). Although technically governed by different statutes and regulations, "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and SSI." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). First, the claimant must not be presently working at any substantial gainful activity. *Id.* §§ 404.1520(a)(4)(i), (b), 416.920(a)(4)(i). "Substantial gainful activity" is defined as work activity involving the use of significant and productive physical or mental abilities for pay or profit. *See id.* §§ 404.1510, 416.910. Second, the claimant must have an impairment or combination of impairments that is severe. *Id.* §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c); *see also Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"). 20 C.F.R. Pt. 404 Subpt. P, App. 1; 20 C.F.R. §§ 404.1520(a)(4)(iii), (d), 416.920(a)(4)(iii), (d).[1] Fourth, if disability cannot be found

---

[1] Before moving from the third to the fourth step of the inquiry, the Commissioner assesses the claimant's residual functional capacity to determine the most the claimant is able to do notwithstanding her physical and mental

2

based on the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), (f), 416.920(a)(4)(iv), (f). Fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity ("RFC"), age, education, and past work experiences. *Id.* §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999). At steps one through four, the burden of proof rests upon the claimant to show she is disabled. *Crowley*, 197 F.3d at 198. If the claimant satisfies her responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of her existing impairments. *Id.* If the Commissioner meets his burden, it is up to the claimant to then show that she cannot perform the alternate work. *See Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

A denial of disability benefits is reviewed only to determine whether the ALJ applied the correct legal standards, and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988) (per curiam). Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if *no* credible evidentiary choices or medical findings support the decision. *Id.* (emphasis added). An ALJ's decision is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so long as

---

limitations. 20 C.F.R. §§ 404.1520(a)(4), (e), 416.920(a)(4), (e). The claimant's RFC is used at both the fourth and fifth steps of the five-step analysis. *Id.* §§ 404.1520(a)(4), 416.920(a)(4). At Step Four, the claimant's RFC is used to determine if the claimant can still do her past relevant work. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At Step Five, the claimant's RFC is used to determine whether the claimant can adjust to other types of work. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

3

substantial evidence supports the conclusion that was reached by the ALJ. *Dollins v. Astrue*, No. 4:08-CV-00503-A, 2009 WL 1542466, at *5 (N.D. Tex. June 2, 2009). The Court may neither reweigh the evidence in the record, nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if substantial evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

A judgment will not be vacated for legal error unless the error prejudiced the claimant. *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). Procedural perfection is not required in administrative hearings. *Id.* To show prejudice, the claimant must show that his or her substantial rights were affected and point to evidence that, had it been provided, would have changed the result. *Id.; Brock v. Chater*, 84 F.3d 726, 729 (5th Cir. 1996). Harmless legal error exists where it is inconceivable that the ALJ would have reached a different decision even without error. *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021) (citing *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003)).

### III. ISSUES

In her brief, Cyphers presents the following issues:

1. Whether the ALJ's determination is supported by substantial evidence and is the product of legal error because the ALJ failed to properly evaluate the opinion of Cypher's neurology specialist, Bishnu Sapkota, M.D. ("Dr. Sapkota"), and failed to adequately explain why he declined to include the restrictions assessed by this physician in the RFC.

2. Whether the ALJ's determination is supported by substantial evidence and is the product of legal error because the ALJ failed to properly evaluate the opinion of Cyphers' treating physician, Omar Selod, D.O. ("Dr. Selod"), and failed to adequately explain why he declined to include the restrictions assessed by this physician in the RFC.[2]

(Plaintiff's Brief ("Pl.'s Br.") at 1.)

---

[2] Plaintiff presents these issues as a single issue in her brief. (Pl.'s Br. at 1.) The Court has divided Plaintiff's issue into two separate issues for analysis purposes.

4

## IV. ALJ DECISION

In his April 22, 2021 decision, the ALJ found that Cyphers had not engaged in any substantial gainful employment since May 2, 2016, her alleged onset date of disability, and that she had met the insured status requirements of the SSA through December 31, 2021. (Tr. 24.) In making his disability determination, the ALJ analyzed whether Cyphers was disabled from May 2, 2016 through the date of the decision. (Tr. 24.)

At Step Two, the ALJ found that Cyphers suffered from the following "severe" impairments: "polyneuropathy, chronic pain syndrome, migraines, bilateral plantar fascial fibromatosis, tibial contracture and tendonitis (status post left gastric recession, posterior calcaneal displacement osteotomy of the left foot), anxiety, depression, and insomnia." (Tr. 25.) At Step Three, the ALJ found that Cyphers did not suffer from an impairment or combination of impairments that met or medically equaled the severity of any section in the Listing.[3] (Tr. 26.)

As to Cyphers' RFC, the ALJ stated:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can stand and/or walk for two hours. She can never climb ladders, ropes or scaffolds. She can occasionally climb ramps and stairs, balance[,] stoop, kneel, crouch, and crawl. She can frequently handle or finger in the bilateral upper extremities. She must avoid concentrated exposure to hazards such as unprotected heights or open flames. Mentally, she can understand, remember, and carry out simple and routine instructions and tasks. She must avoid work where job performance is based on a strict quota requirement.

---

[3] The ALJ also found that, while migraines are not a listed impairment, "the record does not demonstrate that the migraines caused marked limitation in her physical functioning . . . [and] the claimant did not demonstrate marked limitation in any area of broad mental functioning." In making this determination, the ALJ considered the four broad areas of mental functioning known as the "paragraph B" criteria and found that Cyphers' mental impairments did not satisfy the criteria. (Tr. 26–27.)

(Tr. 29 (emphasis omitted).) Based upon this RFC assessment and the testimony of a vocational expert ("VE"), the ALJ concluded at Step Four that Cyphers was unable to perform her past relevant work. (Tr. 35.)

At Step Five, the ALJ found that "[c]onsidering the claimant's age, education, work experience, and residual functioning capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform."[4] (Tr. 36 (emphasis omitted).) Consequently, the ALJ found that Cyphers was not disabled. (Tr. 37.)

## V.   DISCUSSION

### A.   Failure to Adequately Assess Dr. Sapkota's Opinion

As to her first issue, Cyphers argues that the ALJ's RFC determination is not supported by substantial evidence and is the product of legal error because the ALJ failed to properly evaluate the opinion of Cyphers' neurology specialist, Dr. Sapkota, and failed to adequately explain why he declined to include the restrictions assessed by this physician in the RFC. (Pl's. Br. 9–12.) Specifically, Cyphers states:

> [T]he ALJ's analysis is legally erroneous because he failed to properly evaluate and explain his analysis of the opinion of Dr. Sapkota, the neurology specialist who treats Plaintiff for migraines . . . .
>
> . . . [Dr. Sapkota] opined that Plaintiff's impairments would frequently be severe enough to interfere with the attention and concentration needed to perform simple work-related tasks. He estimated that Plaintiff would need to recline or lie down during a hypothetical 8-hour workday in excess of typical breaks, and he estimated that Plaintiff's need for breaks would depend on the frequency of her migraine flareups. Dr. Sapkota reported that, based on his experience with Plaintiff, she would likely be absent from work as a result of her impairments more than four times per month. . . . First, the [ALJ's finding regarding the] lack of specificity about the breaks does not change the fact that the VE testified that the clearly defined amount of work Plaintiff would miss as [a] result of her migraines precludes competitive employment. The vagueness regarding Plaintiff's need for breaks is

---

[4] The VE testified that the claimant would be able to perform the requirements of representative occupations such as: (1) Cashier 2 (DOT # 211.462-010); (2) Routing Clerk (DOT # 222.687-022); and (3) Inspector, hand packager (DOT # 559.687-074). (Tr. 37.)

not a reason to discount Dr. Sapkota's opinion with regard to the number of days that Plaintiff'[s] migraines would preclude her ability to maintain attendance at work. Further, the record independently confirms that Dr. Sapkota provides treatment to plaintiff for her migraines. Although Plaintiff's counsel was not successful in obtaining Dr. Sapkota's treatment records, the notes from treatment by Dr. Lozano confirm that Plaintiff was following up with Dr. Sapkota. Finally, the ALJ's conclusion that Dr. Sapkota's restrictions are inconsistent with the normal findings on mental status examinations is [sic] defies logic. There is no correlation between normal findings on mental examinations and the number of days that an individual will miss work due to intractable migraines, and the ALJ's discussion that addresses only evidence supporting his ultimate conclusion[ ] violates agency regulations.

An ALJ is not free to selectively discuss only the evidence that supports his ultimate conclusion. . . . Here, the ALJ selects an unrelated normal finding from the medical record to support his RFC and discount the opinion of Dr. Sapkota.

The ALJ's reasoning does not comply with 20 C.F.R. §§ 404.1520c(b), 416.920c(b). Without more explanation than is provided here, it is simply not enough to conclude that the opinion of Plaintiff's neurologist is not persuasive. The ALJ failed to adequately address the opinion of Dr. Sapkota, which indicates that, as a result of plaintiff's migraines, she would miss work more than four times per month. The ALJ failed to properly consider the regulatory factors enumerated under 20 C.F.R. §§ 404.1520c(b), 416.920c(b) when he found the assessment of restrictions of Dr. Sapkota to be unpersuasive, and paucity of the rationale violates the articulation requirements set for[th] in the agency's regulations.

(Pl.'s Br. at 10–12 (internal citations omitted).)

RFC is what an individual can still do despite her limitations.[5] SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. *Id.*; *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule. SSR 96-8p, 1996 WL 374184, at *2. RFC is not the least an individual can do but the most. *Id.* The RFC is a function-by-function assessment,

---

[5] The Commissioner's analysis at Steps Four and Five of the disability evaluation process is based on the assessment of the claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005). The Commissioner assesses the RFC before proceeding from Step Three to Step Four. *Id.*

7

with both exertional and nonexertional[6] factors to be considered, and it is based upon all of the relevant evidence in the case record. *Id.* at 3–6. The responsibility for determining a claimant's RFC lies with the ALJ. *See Villa v. Sullivan*, 895 F.2d 1019, 1023–24 (5th Cir. 1990). The ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence. SSR 96-8p, 1996 WL 374184, at *7.

In making the RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017); SSR 96-8p, 1996 WL 374184, at *5. The ALJ must also consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe. *See* SSR 96-8p, 1996 WL 374184, at *5. The ALJ may draw reasonable inferences from the evidence in making his decision, but the social security ruling also cautions that presumptions, speculation, and supposition do not constitute evidence. *See e.g.*, SSR 86-8, 1986 WL 68636, at *8 (1986), *superseded by* SSR 91-7c, 1991 WL 231791, at *1 (Aug. 1, 1991) (changing the ruling only to the extent the SSR discusses the former procedures used to determine disability in children).

The ALJ is not required to incorporate limitations in the RFC that he did not find the record supported. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record."). In reviewing the ALJ's decision, a finding of no substantial

---

[6] Exertional capacity addresses an individual's ability "to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, pulling." SSR 96-8p, 1996 WL 374184, at *5. Each function must be considered separately, but the final RFC assessment may combine activities. *Id.* Nonexertional capacity "considers all work-related limitations and restrictions that do not depend on an individual's physical strength," including mental limitations. *Id.* at *6.

evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd*, 239 F.3d at 704.

As noted above, Cyphers argues that the ALJ erred in failing to properly evaluate the opinion of her neurologist specialist, Dr. Sapkota, which was provided in the form of a Physical Impairment Questionnaire. (Pl.'s Br. at 10; *see* Tr. 10, 661–63.) The ALJ's treatment of medical opinions is governed by the revised rules in 20 C.F.R. § 404.1520c, which apply to claims that were filed after March 27, 2017, such as the claims in the present case. *See Winston v. Berryhill*, 755 F. App'x 395, 402 n.4 (5th Cir. 2018) (citing 20 C.F.R. 404.1520c(a)); *Governor v. Comm'r of Soc. Sec.*, No. 20-54-BAJ-EWD, 2021 WL 1151580, at *6 (M.D. La. Mar. 2, 2021). Pursuant to 20 C.F.R. § 404.1520c(a), the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [claimant's] medical sources." "When a medical source provides one or more medical opinions[7] or prior administrative medical findings,[8] [the ALJ] will consider those medical opinions or prior administrative findings from that medical source together using the

---

[7] Medical opinions are statements from a medical source about what the claimant can still do despite her impairment(s) and whether the claimant has one or more impairment-related limitations or restrictions in certain abilities. These may include claimant's ability to: (i) perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching); (ii) perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting; (iii) perform other demands of work, such as seeing, hearing, or using other senses; and, (iv) adapt to environmental conditions, such as temperature extremes or fumes. *See* 20 C.F.R. § 404.1513(a)(2).

[8] Prior administrative findings are findings other than the ultimate determination about whether the claimant is disabled, about a medical issue made by the Commissioner's federal and state agency medical and psychological consultants at a prior level of review of the claimant's current claim based on their review of the evidence in the case record. Such findings could be on issues including: (i) the existence and severity of the claimant's impairment(s); (ii) the existence and severity of the claimant's symptoms; (iii) statements about whether the claimant's impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix 1; (iv) the claimant's RFC; (v) whether the claimant's impairment(s) meets the duration requirement; and (vi) how failure to follow prescribed treatment and drug addiction and alcoholism relate to the claimant's claim. *See* 20 C.F.R. § 404.1413(a)(5).

9

factors listed in paragraphs (c)(1) through (c)(5) of" section 404.1520c(a), as appropriate. 20 C.F.R. § 404.1520c(a) (footnotes added). The ALJ is not required to articulate how he considered each medical opinion or prior administrative medical findings from one medical source individually. 20 C.F.R. § 404.1520c(b)(1).

"The most important factors [the ALJ] consider[s] when [ ]evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). "The ALJ must explain the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in his determination, and he may, but is not required to, explain how he considered the (c)(3) [through] (c)(5) factors, *i.e.*, relationship with the claimant, specialization, and 'other factors.'" *Governor*, 2021 WL 1151580, at \*7. "Only *if the ALJ finds* that there are two or more medical opinions or prior administrative medical findings about the same issue that are both well-supported and consistent with the record but are not exactly the same, must the ALJ articulate consideration of the (c)(3) through (c)(5) other most persuasive factors for those medical opinions or prior administrative medical findings in the determination." *Id.*

In this case, as set forth above, the ALJ found that Cyphers had the physical RFC to perform light work except she: (1) can only stand and/or walk for two hours; (2) can never climb ladders, ropes, or scaffolds; (3) can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl; (4) can frequently handle or finger in the bilateral upper extremities; and (5) must avoid concentrated exposure to hazards such as unprotected heights or open flames. As to her mental RFC, the ALJ found that Cyphers can understand, remember, and carry out simple and routine instructions and tasks and must avoid work where job performance is based on a strict

quota requirement. (Tr. 29.) In making the RFC determination, the ALJ considered, *inter alia*, opinions from the following sources: (1) the state agency medical consultants ("SAMCs"); (2) neurologist specialist Dr. Sapkota regarding claimant's migraines; (4) podiatrist Tonyka James, DPM ("Dr. James") regarding claimant's pain in her left foot due to tendonitis; (5) surgeon Alan Gregory Garrett, DPM ("Dr. Garrett") regarding surgery on claimant's left foot; and (6) psychologist Peter C. Holm, Ph.D. ("Dr. Holm"), a consultative examiner. (Tr. 34–35.) Regarding Cyphers' migraines and the opinion of Dr. Sapkota, the ALJ stated, *inter alia*:

> Treatment records of her primary provider indicate the claimant was followed by a neurologist, Dr. Bishnu,[9] to treat her migraines, and reflected prescriptions for Imitrex, ketorolac, Topiramate, and Depakote for migraines with improvement reported. The record reflects she visited a neurologist, Dr. Bishnu, on at least one occasion to complete a physical impairment questionnaire. However, no records of Dr. Sapkota's examinations were submitted. Further, the record does not demonstrate that the migraines caused marked limitation in her physical functioning. As discussed below, the claimant did not demonstrate marked limitation in any area of broad mental functioning. Accordingly, the claimant's migraines do not equal listing 11.02.[10]
>
> . . . .
>
> With regard to the claimant's reported headaches or migraines, the record indicates the claimant complained of a few days of occipital and right frontal headaches without exacerbating or relieving factors in June 2020. She was diagnosed with tension type heads [sic] and prescribed a trial of Fioricet or Zanaflex. The claimant sought emergency treatment for migraines July 6, 2020. The claimant was prescribed propranolol in July 2020. The claimant sought further treatment from a neurologist due to continued complaints of migraines. Treatment

---

[9] The Court notes that the ALJ referred to "Dr. Bishnu" various times throughout his decision. (*See, e.g.*, Tr. 26, 31.) However, the Court assumes that these statements refer to Dr. Sapkota, as Dr. Sapkota's full name is "Dr. Bishnu Sapkota." Further, there are no other opinions in the record that were submitted by a "Dr. Bishnu."

[10] When considering the severity of claimant's migraines, the ALJ stated, "[C]onsistent with SSR 19-4p, I considered whether the claimant's migraines are severe enough to equal a listing, such as 11.02, which addresses the functional effects of non-convulsive seizures." (Tr. 26.) The ALJ then considered whether Cyphers' migraines met section 11.02B or D of the Listing. (Tr. 26.) Section 11.02B of the Listing sets forth requirement related to epilepsy characterized by dyscognitive seizures "occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment . . . ." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.02B (internal citations omitted). Section 11.02D of the Listing sets forth the requirements related to epilepsy characterized by dyscognitive seizures "occurring at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatments . . . ." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.02D. (internal citations omitted).

> records of her primary provider indicate the claimant was followed by a neurologist, Dr. Bishnu, to treat her migraines, and reflected indicates [sic] she was prescribed Imitrex, ketorolac, Topiramate, and Depakote for migraines, as well as Aimovig injections, with improvement reported. The record reflects she visited a neurologist on one occasion to complete a physical impairment questionnaire with Bishnu Sapkota. However, the other records of Dr. Sapkota's treatment were not submitted. Physical examinations showed her cranial nerves, motor function, coordination, and sensation were intact. The claimant denied difficulty concentrating or memory loss.
>
> . . . .
>
> I considered the opinion of Bishnu Sapkota, M.D. dated November 30, 2020 (Exhibit 9F). I found the opinion to be unpersuasive. The opinion was not well supported as no treatment records of Dr. Sapkota were submitted, although the claimant was granted additional time to obtain and submit such records and no further time to do so was requested. Further, the opinion was extraordinarily vague as it indicated the claimant would require unspecified numbers of breaks with unspecified frequency to accommodate intermittent flares of symptoms that she indicated required absences of four times per month without any supporting evidence. Her opinion was inconsistent with the claimant's report of improvement of symptoms from her migraines or headaches to other treating physicians and inconsistent with the normal findings on mental status examinations of her other treating physicians.

(Tr. 26–27, 31–35 (internal citations omitted) (footnotes added).)

Based on the foregoing, the Court finds that the ALJ properly considered the opinion's persuasiveness of Dr. Sapkota's opinions using the supportability and consistency factors provided in paragraphs (c)(1) and (c)(2) of 20 C.F.R. §§ 404.1520c(a) and 416.920c(a). Specifically, as to supportability, the ALJ noted that no treatment records were submitted to support the statements made on the questionnaire and no other supporting evidence was provided to substantiate the claims in the opinion. (Tr. 34–35).

As to consistency, the ALJ noted that the statements made on the opinion were inconsistent with the reports of her primary care provider, Jose Javier Lozano, D.O. ("Dr. Lozano"), which state that her migraines had improved and that she was on preventative treatment prescribed by Dr. Sapkota. (Tr. 34–35; *see, e.g.,* Tr. 805.) Additionally, the ALJ found that Dr. Sapkota's

12

opinion was inconsistent with the normal findings on mental status examinations of her other treating physicians. (Tr. 35.) Because the ALJ properly evaluated Dr. Sapkota's opinion in considering both its supportability and consistency with other findings in the record, and the ALJ adequately explained why the opinion was unpersuasive, the ALJ did not err in declining to include the restrictions assessed by Dr. Sapkota in the RFC. The ALJ exercised his responsibility as factfinder in weighing the evidence and choosing to incorporate limitations into the RFC and the hypothetical question to the VE that were most supported by the record. *Jacobs v. Berryhill*, No. 5-17-CV-429, 2018 WL 3323764, at *5 (W.D. Tex. July 6, 2018), *report and recommendation adopted*, 2018 WL 4688775 (W.D. Tex. July 24, 2018). Consequently, remand is not required on this issue.

### B. Failure to Adequately Assess Dr. Selod's Opinions

As to her second issue, Cyphers argues that the ALJ also failed to properly evaluate the opinion of Dr. Selod, her treating physician,[11] and failed to adequately explain why the ALJ declined to include the restrictions assessed by this physician in the RFC determination. (Pl's. Br. 9–12.) Specifically, Cyphers states:

> The ALJ offered ***no rationale at all*** for failing to include the restrictions assessed by Dr. Selod in the RFC. This omission is clear error. An ALJ must articulate how he considered the supportability and consistency factors for a medical opinion in his determination. *William T. v. Comm'r of Soc. Sec.*, No. 6:18-CV-0055-BU, 2020 WL 6946517, at *3 (N.D. Tex. Nov. 25, 2020), citing 20 C.F.R. §404.1520c(b)(w). In *William T.*, the District Court rejected the Commissioner's argument that, since the ALJ properly considered all the medical opinion evidence

---

[11] Dr. Selod's opinion appears in the form of a Physical Impairment Questionnaire dated December 7, 2020. (Tr. 666-67.) In such questionnaire, Dr. Selod, *inter alia*, opined that Cyphers: (1) could never lift ten or more pounds in a competitive work situation and could only occasionally lift less than ten pounds; (2) has limitations in doing repetitive reaching, handling, or fingering and could only use her hands and fingers and arms for 50 percent of the time out of an eight-hour workday for activities such as grasping, turning, and twisting objects, fine manipulation, and reaching; (3) would likely be absent from work more than four times a month as a result of her impairments or treatments; and (4) is not physically capable of working an eight-hour day, five days per week on a sustained basis. (Tr. 666-667.)

13

> in the record, the ALJ's failure to *explicitly* discuss Dr. Rutledge's opinion amounted to no more than a harmless error.
>
> . . . Here, the complete lack of any explanation for failing to adopt Dr. Selod's restrictions precludes meaningful review, and remand is required.
>
> The analysis of the evidence in this case runs afoul of the agency's regulatory scheme for weighing evidence. . . . Here, the ALJ did not properly consider these regulatory factors, yielding both legal error and an RFC which is not supported by substantial evidence. Although the 2017 regulatory changes eliminated the perceived hierarchy of medical sources and deference to specific medical opinions, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [her or she] find[s] all of the medical opinions." Plaintiff accordingly asserts that remand for further proceedings is warranted.
>
> The ALJ's errors are not harmless in this context. The ALJ determined Plaintiff is unable to perform past relevant work. . . .

(Pl.'s Br. 12–13 (internal citations omitted).)

After reviewing the ALJ's decision, it appears, as Cyphers asserts, that the ALJ erred in failing to consider Dr. Selod's opinion in his decision as there is no reference to or discussion of Dr. Selod or his opinion in the decision. Dr. Selod's opinion aligns with Dr. Sapkota's opinion but directly conflicts with opinions from the SAMCs. "Medical opinions, especially conflicting medical opinions, must be considered." *Kneeland v. Berryhill*, 850 F.3d 749, 759 (5th Cir. 2017); *see* 20 C.F.R. 404.1520c(a) ("When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative findings from that medical source . . . .")

While this case can be distinguished from *William T.*, the case cited to by Cyphers, due to the lack of Dr. Selod's treatment records in the record and the ALJ's consideration of multiple other opinions in this case, case law suggests that remand is appropriate for an explanation of the rejected medical opinion. *See Kneeland*, 850 F.3d at 761. "[A]n ALJ commits error when he fails to address or mention a medical opinion—irrespective of whether the ALJ could have rejected it."

*Amanda J. v. Saul*, No. 3:19-cv-1016-B, 2020 WL 4697880, at *3 (N.D. Tex. Aug. 13, 2020), (citing *Kneeland*, 850 F.3d at 759–61)); *see Shedrick M. v. Kijakazi*, No. 3:20-cv-03056-M-BT, 2022 WL 4134786, at *3 (N.D. Tex. Aug. 18, 2022), *report and recommendation adopted*, 2022 WL 413308, at *1 (N.D. Tex. Sept. 12, 2022) ("[B]ecause [the doctor's] opinions were in the case record, it was error for the ALJ not to articulate in her decision how persuasive she found them, much less for her to reject them without an explanation."). Furthermore, while the ALJ made a blanket statement that he considered the entire medial record, such a statement is not a sufficient explanation for rejecting a medical opinion. *See Kneeland*, 850 F.3d at 761 ("And it should go without saying that cursory, boilerplate language about carefully considering the entire record does not constitute an explanation for rejecting a medical opinion.")

The Commissioner argues that any error made by the ALJ regarding Dr. Selod's opinion is harmless because such opinion would not alter the substantial evidence supporting the ALJ's decision. (Defendant's Response Brief ("Def's Resp.") at 6-7.) The Commissioner is correct in stating that procedural perfection in administrative hearings is not required and, as set forth above, a court will not vacate a judgment unless the substantial rights of a party have been affected. *See Mays*, 837 F.2d at 1364; *see also Jones v. Saul*, 834 F. App'x 839, 840 (5th Cir. 2020) ("[T]he harmless error doctrine applies to social security cases.") However, the failure of an ALJ to address an examining physician's medical opinion is not harmless because "such an error makes it impossible to know whether the ALJ properly considered and weighed an opinion, which directly affects the RFC determination." *Kneeland*, 850 F.3d at 762; *see Shedrick M.*, 2022 WL 4124786, at *3.

Because the ALJ failed to mention Dr. Selod's opinion and either did not consider the opinion or rejected it without explanation, the RFC is not based on substantial evidence.

Consequently, the ALJ's error is not harmless because consideration of Dr. Selod's opinion may have resulted in a different RFC. Thus, remand is required for the ALJ to properly consider Dr. Selod's medical opinion.

## RECOMMENDATION

It is recommended that the Commissioner's decision be **REVERSED AND REMANDED** for further administrative proceedings consistent with these proposed findings of fact and conclusions of law.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections by 14 days).

## **ORDER**

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until December 1, 2022, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be file within seven (7) days of the filing date of objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket for the United States District Judge.

SIGNED November 17, 2022.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE